# JOHN T. ROBEY

*vs.*

# ROBERT PROUT.

---

1. A lease of certain real estate for a term of years, renewable forever, was made in trust for the use and benefit of M., a married woman, her heirs and assigns, reserving a stipulated rent, and lessee to pay all taxes ; if the rent should be in arrear sixty days, and sufficient personal property be not found on the premises from which to make such rent by distress, it should be lawful for the lessor, his heirs, etc., to re-enter and terminate the lease. M., her heirs and assigns to have the right of purchase at any time by paying a stipulated price. The lease also gave M., the power to dispose by her last will of her interest in the lease. *Held*, the estate so granted was not a chattel which would pass to the husband by survivorship, for the right to purchase the property at any time by paying the stipulated price especially when taken in connection with the power of disposition by her last will, made the wife's property under the lease an estate for her sole and separate use.

2. A lease for years to the wife, whether it be legal estate in herself, or to a trustee for her, if not held for her own sole and separate use, is a chattel real to which the husband may succeed by survivorship. But if the conveyance be for her sole and separate use, he shall have no interest in the property during her life. Nor shall he have any by survivorship after her death. The property is wholly unaffected by the marriage.

3. A simple conveyance of property for the use and benefit of a married woman, without other provisions, will not defeat the marital rights of the husband. If the property be a leasehold he is possessed of it during her life in her right, with power to alien it at his pleasure, with or without consideration, and if he survive her it is his absolutely; but if she survive him it is hers.

4. But if the term had been conveyed after marriage to trustees for her use and benefit, with the husband's privity and consent, his marital right will not attach in such a case, although it may not have been expressed to be for her sole and separate use.

5. Property of any description may be limited to the use of a married woman ; but whether that use shall be separate or not, depends on the intention of the grantor. When that intention is once ascertained to be that the use is for the wife alone and not for her husband, equity will give effect to it without regard to the legal maxim that the husband is the head of the wife, and, therefore, all that she has belongs to him.

6. A re-entry at common law for condition forfeited is void when there is no evidence to show that any of its forms have been complied with. A mere taking possession of the property

when unoccupied is not such a re-entry for condition forfeited as is contemplated either by the common law or by the statute of 4 George II, Ch. 2.
7. A bill brought by the next of kin for an account of personal property in the possession of the defendant cannot be sustained; such a suit should be brought only by the administrator. The court, however, may retain the case until he obtain letters of administration and afterwards allow him to file an amended or supplement bill in that character.

In Equity. No. 552. Decided February 8, 1870.

APPEAL from a decree of the Special Term on a bill filed to settle rights in certain real estate and for a specific performance, account, etc.

THE FACTS appear in the opinion.

Mr. ENOCH TOTTEN for plaintiff:

The lease is still a valid, subsisting lease. It is not void upon a breach of covenant to pay rent, but only voidable. Doe *vs.* Wandlass, Term R., 116; Taylor on Landlord and Tenant, Secs. 492, 714.

The lessor was bound by the terms of the lease to make his rent by distress if sufficient effects were found on the premises. If sufficient property could not be found to satisfy the rent, after thorough search, then the lease could have been determined by the landlord either by the technical common law demand or under the Act of 4 George II, Chap. 28. No such demand was ever made, nor were any proceedings instituted under the act; consequently the lease is not forfeited. Bowman *vs.* Foot, 1 Am. Law Reg., 361, note 3; Taylor on Landlord and Tenant, Secs. 287, 288, 493; Connor *vs.* Bradley, 1 How., 217; Doe *vs.* Wandlass, 7 Term R., 116; Van Rennselaer *vs.* Jewett, 2 Coms., 148.

But if there has been a forfeiture of the lease it is for a breach of the covenant to pay rent, and courts of equity will always relieve against such forfeitures, because the damages are, susceptible of perfect computation. ,Bowman *vs.* Foot, *supra*; Skinner *vs.* White, 17 John., 357; Taylor on Landlord and Tenant, Sec. 495; 2 Story's Eq. Jur., Secs. 1314, 1318 and authorities there cited.

At common law the landlord could not get possession of vacant premises during the term, even if the tenant had deserted them.    Taylor on Landlord and Tenant, Sec. 714.

Mr. Joseph H. Bradley, Jr., for defendant:

In matters of pedigree, involving essentially the inquiry into the lawful birth of offspring, the chastity of the putative mother and her associations for years are clearly evidence of much weight.

Even where the fact of marriage is established the modern doctrine is established that although the child be born in wedlock the presumption of legitimacy may be rebutted not only by direct but also by presumptive evidence.    To determine the question we must consider not only physical impossibility, but it may also be decided by attending to, the relative situation of the parties, their habits of life evidence of conduct, and to every induction which reason suggests for determining upon the probabilities of the case. The finding should rest in the exercise of sound judgment according to the preponderance of the presumptions.    3 Phil. Ev., 601, and the cases in note 2; Gardiner's Peerage Case; Pendrell *vs.* Pendrell, 2 Str., 924; Banbury's Peerage Case, by Elden, Redesdale and Ellensborough; R. *vs.* Luffe, 8 East, 206; Harq. Co. Litt., 123 *b;* Goodright *vs.* Saul, 4, Term R., 356.

There is no evidence whatsoever of a marriage in *facie ecclesiæ* nor any pretense thereof.

By the Act of Maryland, 1777, Chap. 12, Sec. 1, in force in this District, all persons are prohibited from marrying without the license referred to in Section 12 of the act. In this case there is no evidence of any license issuing, and the absence of a license rebuts the feeble presumption of a marriage between the parties in question in this suit, independent of other strong considerations heretofore mentioned.

In *point* of *practice,* and in *point* of *law,* the *verdict* is *not conclusive.*    2 Story Eq. Jurisp., Sec. 1479, *a.*

In Ansdell *vs.* Ansdell, 4 Mylne et Craig, 449, 454, Lord Cottenham recognized emphatically the above rule.

The plaintiff must make out a good *prima facie* claim to legitimacy at least. The force of his proof is for the sound judgment of the chancellor.

The illegitimacy of any one in the line of ancestors will defeat the plaintiff. 3 Phil. Ev., 598, title Ejectment; see also authorities in note (6), same page.

The rule at common law prevails in the District of Columbia concerning the inability of bastards to inherit.

They may *acquire*, but cannot inherit. Helms *vs.* Franciscus, 2 Bland's Ch. R., 582; 1 Bl. Com. (Sharswood Ed.), 459, and the notes by Chitty.

He may *purchase* to him and his heirs after he obtains a *reputed* name. Co. Litt. 3 *b.*

Her principal incapacity is this—she cannot be *heir* to any one.

*Even general reputation* is not sufficient to raise a *prima facie* proof of marriage sufficient to justify a verdict.

It must be supported by some *original proofs* of the parties demeaning themselves as husband and wife in various relations. 1 Gr. Ev., Sec. 107; 1 Phil. Ev., 234, 235; cases cited by Gr. in note (3).

But the declarations of persons in matters of pedigree are confined to *relations,* and *marriage connections.* 1. Gr. Ev., Sec. 103, and notes (1, 2).

It is enough for the plaintiff in ejectment to show a right of possession. Hylton *vs.* Brown, 1 Wash. C. C., 204.

If the re-entry was not (as the plaintiff claims), made in *conformity with the law,* it will avail him, the defendant, nothing. Bradley *vs.* Connor, 17 Peters, 263.

Undoubtedly Jane Mallion, if living, could maintain ejectment for these premises, for she had *prior peaceable possession* of the premises under a deed duly executed, and the plaintiff says the defendant is an *intruder without legal title.* Nor can the defendant set up the outstanding

title in the trustee's heirs. Christy *vs.* Scott, 14 How., 282; Same *vs.* Findly, *Id.*, 296; Same *vs.* Young, *Id.*, 296; Same *vs.* Hendley, *Id.*, 297.

The clause for re-entry is not inserted as a security for the payment of the rent, nor is it any penalty in the way of money that is capable of being ascertained upon accounting with an auditor after the assessment is due, and the possible consequences for delay in payment have been incurred.

Equity does not always interpose to prevent a forfeiture. Story's Eq. Jurisp., Sec. 1322.

Where compensation can be made, equity will, as a general thing, relieve against a forfeiture. 2 Gr. Cruise, 36, Sec. 29.

Chancellor Kent lays down the rule to be, where the forfeiture has been the result of accident, and the injury is capable of compensation, equity will give relief. Livingstone *vs.* Tompkins, 4 Johns. Ch., 431.

This is a reasonable and fair ground upon which to repose such relief.

In Vermont the question is settled that relief for nonperformance of collateral duties is in the discretion of the Court of Equity, to be judged of according to the circumstances of each case. Dunklee *vs.* Adams, 20 Verm. B., 421; see also Henry *vs.* Tupper, 29 Verm., 358.

A similar doctrine is now recognized in England. Bracebridge *vs.* Buckley, 2 Price, 200; Hill *vs.* Barclay, 16 Ves., 402; *Id.*, Vol. 18, p. 36.

For failure from accident, fraud, surprise, or ignorance, *not willful*, relief will be granted. 2 Lead. Cases in Equity, 464, 465; Eaton *vs.* Lyon, 3 Ves., 693.

Judge Redfield in his note, 2 Story Eq. J., Sec. 1326*a*, 9th Ed., 1866, says the result of the cases seems to be, there is no well settled rule on the subject, or none which is not liable to considerable variation and to be affected by the circumstances of the particular case.

*Finally.* The plaintiff's case rests on a lease for ninety-nine years, renewable forever with a privilege, or covenant, for purchase.

It is a lease made to a trustee for the use and benefit of a married woman, the right of purchase being in her and her heirs.

There are no words creating or raising a *separate estate,* nor any on which a court of equity can lay hold to deprive the husband of his marital rights.

The act of the Assembly of Maryland, 1798, Ch. 101, sub-ch. 7, which has never been modified, leaves estates for years, estates granted for the life of another person or persons, except those granted to the deceased and his heirs, only, &c.; "assets in the hands of an executor or adminis-trator."

They are personal property to every intent. Therefore, on the marriage of a woman, they become the property of the husband, unless they are by *apt words* settled to her separate use.

If they can by possibility be considered choses in action, which they are not, then the same act, Subch. 5, provides that at her death, "all her choses in action shall devolve on her husband in the same manner as if he had taken out such letters," of administration, and "if he shall not in his lifetime, reduce the said choses in action unto pos-session, or obtain judgment thereon, the said choses in action shall devolve on her representative, and administra-tion be granted accordingly."

Under the provisions of another statute, it is settled law in Maryland, on a commission under the Act of Descents, the wife's interest in real estate descended to her undergoes a mutation, and is changed into personal property when the commissioner's sale is ratified by the court and the pur-chaser has complied with the terms of sale. The money is then at the disposal of the husband, and liable for the payment of his debts, and can never be enjoyed by the wife,

but upon the single contingency of her surviving the husband before any appropriation of it has been made by him. State *vs.* Krebs, 6 Harr. and John., 31; Leadenham *vs.* Nicholson, 1 Harr. and Gill, 267.

There are no apt words settling this lease upon Jane Mallion as her *separate* estate.

The words used in the lease are, "to the use and benefit of Jane Mallion, her heirs and assigns."

In Brown *vs.* Clarke, 3 Ves., 166, the Master of the Rolls says there must be a plain and manifest intention to exclude the husband. See also 2 Story's Eq. Jur., Section 1383.

In Lamb *vs.* Milnes, 5 Ves., 518, the Master of Rolls says, "It is necessary to show a decided intention that the husband shall have no interest whatsoever."

So in Hartley *vs.* Hurle, 5 Ves., 540, the same rule is adopted. See also Taylor *vs.* Lake, 4 Sim., 144, 6 Cond. Eng. Ch., 74. Kensington *vs.* Dolland, 2 My. and K., 184, 7 Cond. Eng. Ch., 322.

If it be the true interpretation of the lease, that it was not limited to the sole and separate use of Jane Mallion as if she were a *feme sole* and never married, then her husband's marital rights made the leasehold his property, and it passed by his will to his devisee and legatee, the Rev. Edward Knight, and the plaintiff's bill should be dismissed with costs.

Mr. Justice Wylie delivered the opinion of the Court:

William Prout, now deceased, was seized of the lot in controversy, and in the year 1820 made a lease of it to one Jonathan Porter, for the term of 99 years, renewable forever, in trust for the use and benefit of one Jane Mallion, wife of Vandora Mallion, her heirs and assigns, reserving a rent of $25.80, payable on the 11th of April annually, in addition to the payment by the lessee of all taxes, &c., and if the rent should be in arrear for the period of sixty days, and no sufficient personal property could be found on the premises from which to make such rent by distress, it should

be lawful for the lessor, his heirs, &c., to re-enter and terminate the lease.

The lease also contained a provision that the trustee as such or the said Jane, her heirs or assigns, should have the right to purchase the property at any time by paying the sum of $430, in addition to arrears of rent and taxes.

It also provided that the said Jane Mallion should have the right to dispose of her interest under this lease by her last will and testament. The right given by the contract to the trustee or to the said Jane, her heirs or assigns, to purchase the property at any time at the price stipulated, especially when taken in connection with that conferred upon her to dispose of her interest by last will and testament, made her property under the lease an estate for her own sole and separate use; for these provisions are wholly irreconcilable with a right in her husband to take the leasehold interest by survivorship should she die before him. The lease was, therefore, not a chattel real which could pass to the husband by survivorship.

A lease for years to the wife whether it be a legal estate in herself or to a trustee for her, if not held for her own sole and separate use, is a chattel real to which the husband may succeed by survivorship. But if the conveyance be for her own sole and separate use he shall have no interest in the property during her life, nor shall he have any by survivorship after her death. The property is wholly unaffected by the marriage.

A simple conveyance of property, for the use and benefit of a married woman, however, without other provisions will not defeat the right of the husband in this respect. If the property be a term of years he is possessed of it during her life in her right, he has power to convey it at his pleasure with or without consideration during her life, and if not previously disposed of and he survive her it is his absolutely. But if the wife survive the husband it is hers.

But if the term has been conveyed after marriage to

trustees for her use and benefit with the husband's privity and consent, his marital right will not attach in such a case, although it may not have been expressed to be for her sole and separate use. Turner's Case, 1 Vernon, 7 ; Pitt vs. Hunt, *Id.*, 18 ; Clancy on Rights of Married Woman, 9. " Property of any description may be limited to the use of a married woman ; but whether that use shall be separate or not, depends on the intention of the grantor. When that intention is once ascertained to be that the use is for the wife alone, and not for her husband, equity will give effect to it without regard to the legal maxim that the husband is the head of the wife, and, therefore, all that she has belongs to him." Clancy, 251.

In the present case we think it quite clear that the leasehold interest conveyed by the instrument in question was intended to be for the sole and separate use of Jane Mallion, not liable to be disposed of by her husband, Vandora, in his lifetime or to go to him by survivorship upon her death.

At the date of the execution of this lease Jane Mallion was the wife of Vandora Mallion. They entered under the lease and erected several small tenements upon the property, and so continued in possession, paying the rent and taxes till October, 1852, when she died intestate, leaving one child by a former marriage and her husband, Vandora, surviving.

Vandora Mallion, the surviving husband, continued in possession of the property till his death, which occurred early in 1853—a few months only subsequent to that of his wife. Having been advised that he took his deceased wife's interest in the lease by survivorship he made a will bequeathing this interest to the Rev. Edward Knight, a clergyman of the Roman Catholic Church, who took possession and paid the rents and taxes till 1858 or 1859, when he abandoned all claim to the property, in consequence of the assessment by the city of a heavy special tax for paving the street and the alley bordering on the premises, and

soon afterwards died. For several years the tenants who had been put into possession by Mr. Knight paid no rent to any one, for none was demanded. The rent and taxes being largely in arrear, the defendant to whom the reversion had descended as heir at law of William Prout, the original lessor, issued in 1864 a landlord's warrant to collect these arrears of rent. The tenants were poor, having very little property on which a distress could be levied, and either hid that little or abandoned the premises, and the rent was not collected. Some were induced, however, to remain and the others to return and accept new leases from the defendant, and in this manner it was that he re-entered and now claims to be revested of the estate, as it was in his ancestor before the leasehold contract of 1820 was entered into with Jonathan Porter, the trustee of Jane Mallion.

As a re-entry at common law the proceeding was clearly void, for there is no evidence to show that any one of its forms have been complied with, as to which, being a proceeding to forfeit the estate of the tenant, the law was ever exceedingly strict.

Still less was it a compliance with the provisions of the Statute of 4 George II, Chap. 2, which gives the landlord the privilege of bringing an action of ejectment against the defaulting tenant and substitutes the service of the declaration in ejectment for the re-entry at common law; for no ejectment was ever brought.

It thus appears that the interest of the lessee, under the lease of 1820, has not been forfeited in form or effect by any of the measures which have been adopted for that purpose by the defendant.

It has been shown, also, that on the death of Jane Mallion in 1852, the equitable title to this leasehold interest did not go to Vandora Mallion, the surviving husband; and that his will bequeathing it to the Rev. Edward Knight was void for that purpose. The legal title after her death devolved upon, and was possessed by, Jonathan Porter, or

his representatives, in trust for the personal representatives of Jane Mallion if such had existed; but Jane Mallion died intestate and no administration on her estate was ever taken.

Porter, the trustee, had long before left the District of Columbia, and had not been heard of in many years, so that he was presumed to be dead, and his heirs and personal representatives, if any, were unknown.

At her death Jane Mallion left one child, named Mary Ann Robey, surviving, her sole heir and next of kin. She was the child of a marriage anterior to that between herself and Mallion, and had been married to a man named Robey who died several years previous to the institution of the present suit.

The present suit was brought by this Mary Ann Robey in 1865, very shortly after the defendant had got into possession of the property. The object of the bill is to obtain a decree requiring the defendant to account for the rents and profits received from the property, or which he might have collected subsequently to its abandonment by Mr. Knight; also to obtain a conveyance from the defendant of the reversionary estate on paying the price fixed by the contract of 1820, which she tendered herself ready and willing to pay; and also to correct a misdescription of the property contained in the leasehold contract.

In November, 1866, Mary Ann Robey died intestate leaving an only child, John T. Robey, who in December of the same year filed his bill of revivor, thus succeeding as complainant in the present suit.

The legitimacy of both Mary Ann Robey and of her son, the complainant, has been strongly assailed by the defendant, but we think the preponderance of evidence is in favor of their legitimacy, although the question as to each of them is not so free from doubt as we should like to have it.

Admitting the equitable interest of the complainant in the lease, as derived through his mother and his grand-

mother, the question has been made by the defendant whether he is the proper party to bring the present suit. That lease was personal property, and liable for the debts of the grandmother first and of the mother afterwards, and would have been the subject of administration had any been granted, and administration might yet be taken out upon it.

So far as respects the claim for an account of the rents and profits against the defendant, we think the objection fatal, at least until an amended or supplemental bill can be filed in the case. In Humphreys *vs.* Humphreys, 3 Pr. Wms., 349, the Lord Chancellor (Hardwicke) sustained a demurrer to a bill brought by the next of kin against the defendant for an account of personal estate in the possession of the latter, on the ground that the suit could be brought only by the administrator. The complainant afterwards obtained administration on the estate, when the Lord Chancellor allowed her to amend her bill in that respect. The defendant then pleaded to the amended bill, objecting that the amendment changing the character in which complainant sued from that of next of kin to that of administrator could not be made, because the record would then show that complainant's bill as administratrix would appear to be filed before administration was taken out, and consequently before the right to sue commenced.

But the Lord Chancellor overruled the plea, observing that the mere right to have an account of the personal estate was in the plaintiff as next of kin, and it was sufficient that she had now taken out letters of administration, which, when granted, related to the time of the death of the intestate. " Wherefore his lordship resented this plea as an affected delay, and held that the taking out letters of administration might be charged either by way of supplement or amendment."

As it respects the prayer for an account of the rents and profits in the present case, therefore we could do nothing

better for the complainant than to retain the case until he should have obtained administration on the estates of his mother and grandmother and filed his amended or supplemental bill.

Whether it would be profitable to him to take that course is for himself to consider. It appears to us the defendant's liability to account could not be carried further back than the 1st of January, 1865, when he entered into possession of the property.

Besides there is another aspect of the case in which the same end may be reached, possibly, without the expense and delay necessary to obtain an account in the way just indicated.

By the contract of 1820 the defendant is bound to convey to this complainant, he being the sole heir of Jane Mallion, the whole reversionary interest in the property, when he shall have been paid the sum of $430, besides all the rents and taxes for which the property is liable. Now, this renders a reference to the auditor necessary in order that he may state the account as to these rents, &c., between the parties, before the court can make a decree to settle the sum which the complainant will be required to pay to the defendant for the reversion.

In this view of the case the appointment of an administrator is not required, for the complainant's right to demand the conveyance is a right secured to him by the contract of 1820 as heir of Jane Mallion.

The mistake in the description of the lot in controversy, as charged in the bill, is frankly admitted by the answer, and there is nothing to prevent its being corrected by the decree.

The decree of the court below will require some modification to make it correspond with these view, and the case will have to go to the auditor with instructions accordingly.